921; Collins v. Dalton Clark Stave Co., 128 La. 250, 54 So. 788.

The title to real estate not being involved, and the amount in controversy at the time of decision of the lower court being less than $100, this court is without jurisdiction ratione materiæ, and the motion to dismiss will have to be sustained.

It is therefore ordered, adjudged, and decreed that the appeal in this case be dismissed, at appellant's cost.

## RENTZ v. PHŒNIX UTILITY CO.
### No. 985.

Court of Appeal of Louisiana. First Circuit

May 3, 1932.

John A. Smith, Jr., of New Orleans, for appellant.

Vinson M. Mouser, of Columbia, for appellee.

ELLIOTT, J.

Amos R. Rentz alleges: That he was the grandfather of John W. Rentz, and wholly dependent on him for support; that said John W. Rentz, while in the employment of Phœnix Utility Company, was accidentally killed on or about April 2, 1931, in the parish of Ascension, while performing services arising out of and incidental to his employment in the course of his employer's business; that his said grandson was receiving wages at the time of his death at the rate of $6 per day, working 6 days a week, making a weekly wage of $36 per week; that he was the sole dependent of his grandson at the time of his said grandson's injury and death, and is therefore entitled to compensation from the Phœnix Utility Company in the amount of 32½ per cent. of his grandson's weekly wages for a period of 300 weeks.

Phœnix Utility Company, defendant, admits in its answer that John W. Rentz was killed while working for it performing services arising out of and incidental to his employment, but denies that it owes plaintiff compensation on said account. There was judgment in favor of the plaintiff as prayed for. Defendant has appealed.

It was admitted in the note of testimony made upon the trial of the case that John W. Rentz was in the employment of defendant, and was killed as the result of accident as alleged by the plaintiff; that he was being paid as wages for his work at the time of his death $6 per day, and $36 per week; that said J. W. Rentz was the legitimate son of E. R. Rentz, and that E. R. Rentz was the legitimate son of the plaintiff.

Defendant states and admits on the first page of its brief, as its position in the case, that the plaintiff was partially dependent for support on the deceased at the time of decedent's injury and death; therefore the question to be decided is whether plaintiff was wholly dependent for support on the wages of John W. Rentz at the time of his injury and death, and also whether he was at the same time the decedent's only dependent.

The law governing is Act No. 20 of 1914, § 8 (as amended by Act No. 242 of 1928). This section under subsection 2, pp. 358 and 359 of Act No. 242 of 1928, provides:

"For injury causing death within one year after the accident there shall be paid to the legal dependents of the employee, actually and wholly dependent upon his earnings for support at the time of the accident and death, a weekly sum as hereinafter provided, for a period of three hundred weeks.

"If the employee leaves legal dependents only partially actually dependent upon his earnings for support at the time of the accident and death, the weekly compensation to be paid as aforesaid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident."

Under the letter (D), subsec. 2, p. 359, after providing for the compensation of the sur-

viving widow and children, etc., the act then declares: "In all other cases, the question of legal and actual dependency in whole or in part, shall be determined in accordance with the facts as they may be at the time of the accident and death. * * *"

And under the letter (I), subsec. 2, p. 361 of the act: "In all cases provided for under this Section the relation or dependency must exist at the time of the accident and at the time of death, and the mere expectation or hope of future contribution to support of an alleged dependent by an employee, shall not constitute proof of dependency as a fact."

■ Therefore the burden is upon plaintiff to establish by a preponderance of proof and with reasonable certainty that he was wholly dependent for support upon the earnings of his said grandson at the time of his grandson's injury and death, and that he was, moreover, at the same time, the decedent's only dependent.

The record contains 14 letters written by the decedent to the plaintiff between September, 1929, and April, 1931; the last one having been written the day previous to his death. These letters are all that was produced. It may have been that there were others, but, if so, the evidence does not show it.

The decedent's work carried him from place to place in different parts of the state, and that accounts for the fact that they were written from a half dozen different places. All of these letters apparently had no motive on the part of John W. Rentz in view, except to discharge a dutiful regard, and the writer's filial care for the plaintiff. They manifest for the plaintiff the writer's sympathy on account of his poor health, and in a number of them he makes voluntary remittances of money for his support. In a number of them he speaks of plaintiff's support as the care of the writer. In one of them he speaks of having sent him clothing. The value of the letters as showing plaintiff's dependency and the writer's undertaking on the subject could be better appraised, if the letters from plaintiff to his grandson, to which these letters are replies, were before us, but as it is, the letters indicate that plaintiff complained of poor health, that he was no longer able to support himself by work, stood in need of financial assistance, and J. W. Rentz, by his letters, may be considered to have acknowledged his responsibility on that account, at a time and under circumstances which do not admit of suspicion. The letters do not indicate a state of partial dependency, but that plaintiff was wholly dependent for support on the writer for more than a year previous to the death of J. W. Rentz.

The plaintiff testifies to the same effect, that he is unwell, suffers with an ailment of the stomach, that he is unable to work, and has been so situated for two or three years previous to the death of his grandson. He testifies that at the time of his grandson's death he was 77 years old; that the mother of J. W. Rentz died when he was about a week old; that she gave this child into the care and keeping of the plaintiff and his wife, and they raised him from the time he was about a week old.

J. W. Rentz was 26 years old at the time of his death, and had never been married. The evidence shows that plaintiff had been a hard working farmer all of his life. He had formerly owned his own farm and had cultivated it with success, making a good living. But about the year 1922 his son E. R. Rentz, the father of J. W. Rentz, got into trouble. The plaintiff sold his farm for $2,000, and used about half of the proceeds to get his son out of trouble, and the balance for the support of himself and wife, the grandmother of J. W. Rentz.

Plaintiff built a small two-room house on the land of a friend about two years previous to the trial, and has since then been living in it alone.

He cultivated a small garden and raised a few vegetables, but testifies that he was sick all the time and unable to work, and has been for several years.

The plaintiff is supported in his testimony by neighbors and friends, and there is nothing that we can see that casts doubt upon any statement he has made.

Defendant's agent obtained a statement from the plaintiff, the day after his grandson's death, which was offered in evidence by the defendant and received in evidence without objection by the plaintiff, which defendant contends shows that John W. Rentz only contributed to plaintiff's support about $65 for the last two years previous to his death.

The statement reads as follows: "Since John W. Rentz has been working away from home he has given me altogether about $65.00. This covers the period of about the last 2 years."

Plaintiff, questioned on this subject, testified on the trial that the statement was wrong:

"Q. Mr. Rentz, you do not know how much money John sent you that year? A. No Sir, I think he sent me at least $150.00. I do not know how much he sent me the last year before he got killed, might be $200.00."

According to plaintiff's testimony on the trial, he had, during the year preceding, earned on one occasion $2, and at the time of the death of J. W. Rentz there was on deposit in a bank near where the plaintiff lived $109 to his credit, put there for his benefit by J. W. Rentz. The amount of his deposit taken into account and the amount of clothing which he says J. W. Rentz provided for him,

and the fact that he was supported with money given him by J. W. Rentz, indicates that J. W. Rentz must have given him, for the last year previous to his death, from $150 to $200.

The evidence shows that E. R. Rentz is living, but he has his own family and has never contributed to the support of his father. And it does not appear that he has ever sought to assist or is in a position to assist the plaintiff in any way. The evidence shows that plaintiff has other children, but they have families, and nothing indicates that they have contributed anything to the support of the plaintiff or have ever sought to help him in any way. It does not appear that plaintiff looked to them for any help. The plaintiff has two other grandchildren, a sister and a brother of J. W. Rentz, but they have their own families, and it does not appear that they have ever contributed anything to the support of the plaintiff, that they are in position to help him, or that the plaintiff has ever looked to them for assistance. The evidence justifies the conclusion that plaintiff looked to, depended on, and received support from, J. W. Rentz only, and was wholly dependent on him for about two years previous to his death.

The duty of children to support their parents in need is recognized by our law. Act No. 241 of 1910; Civil Code, art. 229.

"By alimony we understand what is necessary for the nourishment, lodging and support of the person who claims it." Civ. Code, art. 230.

In Ruling Case Law, vol. 28, subject, Workman's Compensation Acts, § 64, the author says, having reference to dependents of employees: "The purpose of the Workman's Compensation Act, is not limited to the payment of compensation to injured employees during the period of their incapacity; it extends as well to all persons who are related to such employees by ties of blood or marriage and who are deprived of support and maintenance by reason of his death." The section concludes by saying, "The definitions of the dictionaries should be discarded and words should be construed in the sense in which they are understood in common language, taking into consideration the text and subject matter relative to which they are employed."

Section 66 contains the following: "Undoubtedly total dependency is shown to have existed where it appears that the applicant relied entirely for support upon the earnings of the deceased, but a claimant will not be held to have forfeited the right attaching to total dependency by reason of the fact that occasionally assistance was received from other persons."

Parents as dependents, is the subject of section 72: "And it is not essential to show exactly what proportion of the parents' living expenses was contributed by the child.—Inasmuch as dependency is not based upon absolute necessity, a father may be found to be dependent upon the earnings of his son who has given his wages to his father, although the latter might also be earning wages which should have supported him and his family."

From Workman's Compensation Law by Schneider, subject, Dependency, § 372, p. 937, we copy as follows: "Total dependency exists when persons come within the statutory classification of who may be dependents, subsist entirely upon the earnings of the workman irrespective of the fact that in the absence of the assistance such persons would be able to support themselves. It is immaterial that gratuitous contributions from persons other than the workman are occasionally received, that they hold small savings of their own, and that the money received from the workman were other than his earnings and were paid to others for the support of the one claiming dependency."

In Milliken & Farwell v. Roger, 138 La. 823, 70 So. 848, 849, a plantation owner testified: "My daughter is 34 years old. She is unable to perform clerical work, and cannot do anything to earn her living, and depends entirely upon me for support. She is very delicate in health." This testimony was held sufficient to establish the dependency of a daughter upon her father for purpose of claiming a homestead. It is our conclusion that plaintiff has shown himself to have been wholly dependent for support upon the wages of John W. Rentz at the time of the injury to, and death of, said Rentz. That said state of dependency existed for more than a year previous to the death of the said Rentz, and that the said plaintiff was moreover the only person who was dependent on John W. Rentz during said time.

The testimony in the case was summed up by the judge of the lower court as follows: "Everything considered the conclusion is forced that this old man was entirely dependent upon his grandson for support; that it was to him and him only that he did look for that care and protection which decrepit old age can not command for itself."

Under the evidence, J. W. Rentz was earning at the time of his death $6 per day, and $36 per week. The compensation to which the plaintiff is entitled is fixed by the law at 32½ per cent. of the weekly earnings of J. W. Rentz. It amounts to $11.70 per week, and is to be paid for a period of 300 weeks.

The judgment appealed from so ordered, and it is correct. Judgment affirmed.

Defendant and appellant to pay the cost in both courts.